******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* JOSEPH V.*
## (SC 20504)

McDonald, D'Auria, Mullins, Kahn and Ecker, Js.

*Syllabus*

A criminal information is duplicitous when it charges a defendant in a single
count with two or more distinct and separate criminal offenses, thereby
implicating the defendant's constitutional right to a unanimous jury
verdict.

In the companion case of *State* v. *Douglas C.* (345 Conn. 421), this court
recognized that a duplicitous information may raise two distinct and
separate kinds of issues regarding a defendant's right to jury unanimity:
unanimity as to the elements of a crime, which arises when a defendant
is charged in a single count with having violated multiple statutory
provisions, subsections, or clauses, requiring the court to determine
whether the statutory provisions, subsections, or clauses constitute sep-
arate elements of the statute, thereby requiring jury unanimity, or alterna-
tive means of committing a single element, which do not require jury
unanimity; and unanimity as to instances of conduct, which arises when
a defendant is charged in a single count with having violated a single
statutory provision, subsection, or clause on multiple, separate
occasions.

Convicted of the crimes of sexual assault in the first degree, risk of injury
to a child, and conspiracy to commit risk of injury to a child in connection
with his sexual abuse of the victim, the defendant appealed to the
Appellate Court. T, the victim's half brother, began sexually abusing the
victim when the victim was four or five years old. In 2006, T moved to
a new residence with his and the victim's father, where the victim
would periodically have overnight visits. T's sexual abuse of the victim
continued at the father's residence. The defendant, who is a first cousin
of the victim and T, also began to sexually abuse the victim at that time.
The defendant and T often abused the victim simultaneously, and the
abuse occurred until 2010, when the victim was ten years old. In the
risk of injury count, the state alleged that, on "diverse dates" between
2006 and 2010, at the residence of the victim's father, the defendant had
contact with the victim's intimate parts and subjected the victim to
contact with the defendant's intimate parts, in violation of the risk of
injury to a child statute (§ 53-21 (a) (2)). In the sexual assault count,
the state alleged that the defendant had violated the first degree sexual
assault statute (§ 53a-70 (a) (2)) by engaging in fellatio and anal inter-
course with the victim, also on diverse dates between 2006 and 2010 at
the father's residence. Prior to trial, defense counsel sought a bill of
particulars, claiming that the information was duplicitous in that the
evidence at trial would show multiple, separate incidents of abuse, each
of which could constitute a separate violation of the statutes at issue,
giving rise to the risk that the defendant would not be afforded a unani-
mous verdict because the jurors could reach a guilty verdict on the
same count on the basis of findings as to different incidents of sexual
abuse. The trial court denied counsel's motion for a bill of particulars,
and, at trial, the state offered testimony from the victim and T about
four separate incidents of abuse that occurred on distinct dates, as well
as the victim's testimony that additional incidents of abuse had occurred
but had "blurred together" in his memory. Thereafter, the trial court
denied defense counsel's request that the jury be given a specific unanim-
ity instruction as to each count. The Appellate Court affirmed the judg-
ment of conviction, and the defendant, on the granting of certification,
appealed to this court, claiming that the trial court had violated his
constitutional right to jury unanimity as to instances of conduct by
denying defense counsel's requests for a bill of particulars and a specific
unanimity instruction insofar as each count was premised on multiple,
separate incidents of unlawful conduct, each of which could establish
a separate violation of the same statute. In the alternative, the defendant
claimed that the counts pertaining to risk of injury and conspiracy to
commit risk of injury violated his right to jury unanimity as to the

elements of those crimes because each count was premised on multiple violations of the alternative types of conduct prohibited by § 53-21 (a) (2), namely, the defendant's having contact with the victim's intimate parts, on the one hand, or the defendant's subjecting the victim to contact with the defendant's intimate parts, on the other. *Held*:

1. Applying the three-pronged test that this court adopted in *Douglas C.* for claims of jury unanimity as to instances of conduct, this court concluded that, although the risk of injury to a child and conspiracy to commit risk of injury counts were not duplicitous and did not violate the defendant's right to unanimity, the first degree sexual assault count was duplicitous, the trial court's denial of counsel's request for a specific unanimity instruction or a bill of particulars with respect to that count violated the defendant's right to unanimity, the defendant suffered prejudice as a result of that violation, and, accordingly, this court reversed the Appellate Court's judgment insofar as that court affirmed the defendant's conviction of sexual assault in the first degree and remanded the case for a new trial with respect to that offense only:

   a. The count of the information charging the defendant with risk of injury to a child was not duplicitous because, although the state had the discretion to charge him with violating § 53-21 (a) (2) for each incident of conduct that had occurred, the state properly charged and presented the case to the jury as a continuing course of conduct:

   Although the risk of injury count was premised on multiple, separate incidents of conduct, insofar as it alleged that the sexual abuse occurred on diverse dates over the span of four years and as the testimony at trial concerned four separate instances of sexual intercourse on distinct dates, the defendant's claim failed under the second prong of the test applicable to unanimity as to instances of conduct for the reasons set forth in the companion case of *Douglas C.*, in which this court held that § 53-21 (a) (2) criminalizes both a single incident of conduct and an ongoing course of conduct such that, when a defendant commits multiple, separate acts of having contact with the intimate parts of the same alleged victim as part of a continuing course of conduct, the state has discretion to charge the defendant either with multiple counts of having violated § 53- 21 (a) (2), with each count premised on a single incident, or with a single count of having violated § 53-21 (a) (2) premised on a continuing course of conduct.

   In the present case, the trial court's denial of defense counsel's requests for a bill of particulars and a specific unanimity instruction did not violate the defendant's constitutional right to jury unanimity, as the risk of injury count contemplated an ongoing course of conduct, the state charged the defendant with a continuing course of conduct and argued to the jury that multiple incidents of unlawful conduct had occurred, and the jury reasonably could have found that the incidents at issue involved a single victim and furthered a single, continuing objective to touch the victim in a sexual and indecent manner.

   b. The count of the information charging the defendant with sexual assault in the first degree, in which multiple, separate instances of assault were alleged, was duplicitous, and the trial court's failure to provide the jury with the requested specific unanimity instruction on that count violated his right to jury unanimity by creating the possibility that the jury found him guilty of that offense without having agreed on which of the multiple instances of conduct he committed:

   In view of the allegations in the sexual assault count, as well as the evidence admitted at trial in support of that charge, including the testimony concerning the four specific instances of sexual intercourse, each of which occurred on different dates, at different times, and in different locations in the father's residence, this court concluded that the present case, as presented to the jury, did not involve multiple acts of sexual intercourse committed in the course of a single incident of brief temporal duration but, rather, involved multiple, separate incidents.

   The language of § 53a-70 (a) (2), as well as this court's case law interpreting that language, indicated that the legislature intended to criminalize only single acts of sexual intercourse and not a continuous course of conduct, this court has not recognized a common-law exception for a continuing course of sexual assault, even in cases involving children,

and, accordingly, in the absence of a unanimity instruction to the jury, the information charging the defendant with one count of sexual assault premised on multiple, separate instances of conduct, each of which could have supported a separate offense, was duplicitous and violated the defendant's constitutional right to jury unanimity.

Moreover, the duplicitous nature of the sexual assault count prejudiced the defendant, as it created the potential for the jury to be confused or to disagree about which of the various, alleged acts of sexual intercourse the defendant committed, as the jury reasonably could have interpreted the trial court's instruction that it must unanimously agree that at least one violation of § 53a-70 (a) (2) occurred by either fellatio or anal intercourse to mean that it had to agree that an instance of sexual intercourse had occurred but not which specific instance had occurred.

c. The count of the information charging the defendant with conspiracy to commit risk of injury to a child was not duplicitous:

Although there was testimony that the defendant and T gave each other a look before the first, specific instance of sexual assault occurred and that T was present when the defendant sexually assaulted the victim during the third specific instance, it is well established that a conspiracy may be alleged as a continuing course of conduct, and, therefore, a single count of conspiracy premised on a continuous course of conduct is not duplicitous.

In the present case, the information and the prosecutor's closing argument to the jury clearly showed that the conspiracy count was premised not on two separate conspiracies but, rather, on a single, ongoing conspiracy, with the evidence of the look that T and the defendant exchanged and T's presence during the third incident merely constituting separate proof of their ongoing agreement to commit the crime of risk of injury against the victim through contact with intimate parts.

2. The defendant could not prevail on his claim that the risk of injury to a child and conspiracy to commit risk of injury counts were duplicitous on the ground that they violated his right to jury unanimity as to the elements of the crime, as the language in § 53-21 (a) (2) created two ways to satisfy the element of contact with intimate parts, that is, the defendant's having contact with the victim's intimate parts and the defendant's forcing the victim to have contact with the defendant's intimate parts:

Upon review of this state's precedent and federal case law, this court concluded that the appellate courts of this state have been applying the wrong test to claims regarding jury unanimity as to the elements and adopted the test applied by the majority of federal courts of appeals to determine whether multiple statutes, statutory provisions, or statutory clauses constitute separate elements or alternative means of committing a single element, pursuant to which courts consider the statutory language, relevant legal traditions and practices, the overall structure of the statute at issue, its legislative history, moral and practical equivalence between the alternative actus rei or mentes reae, and any other implications for unfairness associated with the absence of a specific unanimity instruction.

This court's case law suggested that the language in § 53-21 (a) (2) prohibiting any person from "[having] contact with the intimate parts . . . of a child under the age of sixteen years or subject[ing] a child under sixteen years of age to contact with the intimate parts of such person" established alternative means of violating the statute rather than separate elements, and, to the extent the statutory language was ambiguous, the legislative history indicated that subsection (a) (2) of § 53-21 was created to distinguish sexual contact from the nonsexual contact prohibited under subsection (a) (1), and this court was not aware of any moral or practical distinction between a defendant's having contact with a child's intimate parts and a defendant's forcing of a child to have contact with the defendant's intimate parts.

(*Two justices concurring in part and dissenting in part*)

Argued November 15, 2021—officially released December 13, 2022**

*Procedural History*

Substitute information charging the defendant with the crimes of sexual assault in the first degree, risk of injury to a child and conspiracy to commit risk of injury to a child, brought to the Superior Court in the judicial district of Waterbury, where the court, *K. Murphy, J.*, denied the defendant's motions for a bill of particulars and to preclude certain evidence; thereafter, the case was tried to the jury; verdict and judgment of guilty, from which the defendant appealed to the Appellate Court, *Keller, Bright* and *Flynn, Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Reversed in part*; *new trial.*

*Megan L. Wade*, assigned counsel, with whom was *James P. Sexton*, assigned counsel, for the appellant (defendant).

*Timothy F. Costello*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, *Amy L. Sedensky* and *Don E. Therkildsen, Jr.*, senior assistant state's attorneys, and *Jennifer F. Miller*, former assistant state's attorney, for the appellee (state).

*Opinion*

D'AURIA, J. Today, in *State* v. *Douglas C.*, 345 Conn. 421,       A.3d       (2022), we held that a single count of an information that charges a defendant with a single statutory violation is duplicitous when evidence at trial supports multiple, separate incidents of conduct, each of which could independently establish a violation of the charged statute. In the absence of a specific unanimity instruction to the jury or a bill of particulars, such a count violates a defendant's constitutional right to jury unanimity and requires the reversal of the judgment of conviction if it creates the risk that the defendant's conviction occurred as the result of different jurors concluding that the defendant committed different criminal acts.

We now must apply our holding in *Douglas C.* to the present case in which the defendant, Joseph V., appeals from the judgment of the Appellate Court, which affirmed the trial court's judgment of conviction, rendered following a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2),[1] risk of injury to a child in violation of General Statutes § 53-21 (a) (2),[2] and conspiracy to commit risk of injury to a child in violation of § 53-21 (a) (2) and General Statutes § 53a-48 (a). The defendant claims that each count was duplicitous because each count charged him with a single violation of the underlying statute despite evidence at trial of multiple, separate incidents of conduct, each of which could establish a violation of the statute, thus creating the possibility that the jury found him guilty without having unanimously agreed on which incident occurred. As a result, he argues that the trial court's failure to either grant his request for a bill of particulars or a specific unanimity instruction violated his federal constitutional right to jury unanimity. We agree with the defendant as to the sexual assault count but disagree with him as to the risk of injury and conspiracy counts. Accordingly, we reverse in part the Appellate Court's judgment and remand the case to that court with direction to remand the case to the trial court for a new trial on the sexual assault count.

The Appellate Court's opinion contains a detailed discussion of the facts that the jury reasonably could have found, along with the procedural history of this case, which we summarize briefly. When the victim was four or five years of age, his half brother, T, began frequently abusing him in a sexual manner. *State* v. *Joseph V.*, 196 Conn. App. 712, 716, 230 A.3d 644 (2020). In 2006, after the abuse by T had begun, T and the victim's father moved to a new residence, while the victim and his mother continued to reside together, although the victim would have overnight visits at his father's new residence. Id. T's abuse of the victim continued at the father's new residence. Id. Both prior to and following the time that the victim's father and T

moved to the new residence, the defendant, a first cousin of both T and the victim, had a close relationship with T, including an ongoing sexual relationship. Id., 715, 717. After the victim's father and T moved to the new residence, the defendant, when he was fifteen years old, began to sexually assault the victim. Id., 717. This abuse often involved simultaneous sexual abuse of the victim by T and occurred until the victim was ten years old. Id.

When the victim was thirteen, he revealed the sexual abuse in digital correspondence to The Trevor Project, a California based organization. Id., 719. After he did not receive an immediate response, the victim used an instant messaging feature on The Trevor Project's website to speak with a counselor. Id. During this instant messaging conversation, the victim again revealed the sexual abuse by T and the defendant. Id.

The counselor at The Trevor Project, as required by law, reported the victim's allegations of sexual assault to the Los Angeles County Department of Children and Family Services, which, in turn, contacted the police in the Connecticut municipality in which the victim resided. Id., 720. In response, the police visited the residence of the victim and his mother. Id. The victim told the police about the alleged sexual assault by T and the defendant, and the defendant was then arrested.[3] Id.

The state initially charged the defendant with two counts of sexual assault in the first degree, one count of risk of injury to a child, and one count of conspiracy to commit risk of injury to a child. Id., 721 and n.9. The defendant's criminal trial on these four counts ended in a mistrial. See id., 721 n.8. After the mistrial, the defendant filed a motion for a bill of particulars, seeking to compel the state to allege within the charging instrument additional information with respect to each charge. Id., 721–22. In response, the state filed a substitute information (the operative information at the time of the defendant's second trial), limited to one count of sexual assault in the first degree, one count of risk of injury to a child, and one count of conspiracy to commit risk of injury to a child. Id., 722 and n.12.

The trial court then heard argument on the defendant's motion for a bill of particulars. Id., 722. Defense counsel argued that, based on the evidence offered at the prior trial, the defense anticipated that there would be testimony regarding multiple, separate incidents of abuse, each of which could constitute a separate violation of the statutes at issue. Id., 722–23. As a result, she asserted, there was the potential "risk that one or more jurors could reach a guilty verdict with respect to a count on the basis of their findings with respect to an incident of abuse proven by the state, and one or more jurors could reach a guilty verdict on the same count, but on the basis of their findings with respect to a different incident of abuse proven by the state." (Emphasis omit-

ted.) Id., 723. Defense counsel stated that, if the trial court denied the motion for a bill of particulars, she would request that the court give the jury a specific unanimity instruction. Id., 724. The prosecutor responded that no concern about unanimity existed because he expected the defense to argue generally that the victim was not credible and, therefore, that the state had not met its burden of proof. Id. The trial court agreed with the prosecutor and denied the defendant's motion, ruling that, before returning a guilty verdict, the jury was required only to unanimously agree on whether the defendant had engaged in the type of conduct proscribed by the statutes during the time frame alleged. Id., 724–25.

At trial, the victim testified about three distinct incidents of abuse by the defendant. See id., 717 n.3. T testified about an additional distinct incident of abuse of the victim by the defendant during which T was present but did not participate. Id., 718 and n.5. "The victim also testified that, beyond the incidents he described, many other incidents of sexual abuse involving the defendant and T had 'blurred together because there [were] too many to count and distinguish between.' These incidents, which always occurred at the home of the victim's father, involved the touching of intimate parts, oral sex, and anal sex. The victim recalled that the defendant and T abused him simultaneously and would frequently take turns or 'trade off' in terms of the sexual acts that they committed against him."[4] Id., 717 n.3.

As a result of this testimony, defense counsel requested that the trial court give the jury a specific unanimity instruction as to the charge of sexual assault in the first degree, arguing that, without this instruction, the count was duplicitous and, thus, infringed on the defendant's right to jury unanimity. Id., 724–25. Relying on the rationale set forth in its prior ruling, the trial court declined defense counsel's request. Id., 726–27. The following day, outside the presence of the jury, defense counsel renewed her request for a specific unanimity instruction, clarifying that the request applied to all three counts. Id., 727. The trial court declined to give the requested charge. Id., 728.

The jury returned a guilty verdict on all three counts. Id., 715. The trial court sentenced the defendant to a total effective term of twenty years of incarceration, execution suspended after ten years, followed by ten years of probation with special conditions, including lifetime inclusion on the state's sex offender registry. Id., 715 n.1.

The defendant appealed to the Appellate Court, claiming that the trial court improperly had denied his request for a bill of particulars and/or a specific unanimity jury instruction because the three counts were duplicitous, thereby violating his federal constitutional right to jury unanimity. Id., 730–31. The Appellate Court

affirmed the trial court's judgment; id., 763; explaining that "whether the state's substitute information posed a risk that the jurors may not have been unanimous . . . comes down to whether the defendant's criminal liability for each offense was premised on his having violated one of multiple statutory subsections or elements." Id., 740. The court then examined the statutory language underlying each count to determine whether multiple statutory subsections or elements were at issue. Id., 744–47. As to count one, which charged the defendant with sexual assault in the first degree, the Appellate Court held that there were no unanimity concerns because the defendant was charged with violating only one statutory subsection, which prohibited only a single type of conduct. See id., 744–45. As to counts two and three, which charged the defendant with risk of injury to a child and conspiracy to commit risk of injury to a child, respectively, the court held that, because § 53-21 (a) (2) contemplates a violation premised on two alternative types of conduct—namely, the defendant's making contact with the victim's intimate parts or, in the alternative, the defendant's subjecting the victim to contact with his intimate parts—these counts rested on alternative bases of criminal liability, and, thus, it was possible that the jury was not unanimous with respect to the specific type of statutorily prohibited conduct that occurred. See id., 746. The court held, however, that, because the trial court did not expressly sanction a nonunanimous verdict, no specific unanimity instruction was required. Id., 747–48. We granted certification to appeal.[5] Additional facts and procedural history will be provided as necessary.

I

As he did in the trial court, the defendant claims that all three counts that the state charged—sexual assault, risk of injury, and conspiracy to commit risk of injury—were improperly duplicitous, creating the possibility that the jury was not unanimous as to the specific incident of criminal conduct he committed. Thus, he contends that the trial court's denial of his requests for a bill of particulars or a specific unanimity instruction deprived him of his constitutionally guaranteed right to a unanimous verdict. Specifically, he argues that the information charged him with only one count each of sexual assault, risk of injury to a child, and conspiracy to commit risk of injury to a child but that testimony at trial described multiple, separate incidents of conduct, each of which could constitute a separate violation of the statutes at issue. As a result, he maintains that either a bill of particulars or a specific unanimity instruction was required because of the potential that the jury could find him guilty without agreeing on which criminal act he committed.

Applying the test detailed in *Douglas C.*, we agree with the defendant that count one alleging first degree

sexual assault was duplicitous, and thus the trial court's denial of his request for a specific unanimity instruction or a bill of particulars violated his constitutional right to jury unanimity. Finding as we do that the defendant suffered prejudice as a result of this violation, we must reverse the judgment of conviction in part and remand the case for a new trial on that count. We disagree, however, with the defendant's claim that counts two and three were duplicitous, thereby violating his right to unanimity as to instances of conduct and, thus, affirm his conviction of risk of injury to a child and conspiracy to commit risk of injury to a child.

"Although we generally review the denial of a motion for a bill of particulars for abuse of discretion . . . because this claim is premised on an alleged infringement of the defendant's constitutional rights, our review is plenary." (Citation omitted.) *State* v. *Douglas C.*, supra, 345 Conn. 435. "Duplicity occurs when two or more offenses are charged in a single count of the accusatory instrument. . . . [A] single count is not duplicitous merely because it contains several allegations that could have been stated as separate offenses. . . . Rather, such a count is . . . duplicitous [only when] the policy considerations underlying the doctrine are implicated. . . . These [considerations] include avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution. . . . A duplicitous information [implicating a defendant's right to jury unanimity], however, may be cured either by a bill of particulars or a specific unanimity instruction." (Citations omitted; internal quotation marks omitted.) Id., 433–34.

The defendant argues only that the allegedly duplicitous counts implicated his right to a unanimous verdict, and thus we limit our analysis to that issue. The defendant's right to jury unanimity under the sixth amendment to the United States constitution ensures that a jury "cannot convict unless it unanimously finds that the [g]overnment has proved each element" of the charged crime. *Richardson* v. *United States*, 526 U.S. 813, 817, 119 S. Ct. 1707, 143 L. Ed. 2d 985 (1999). Nevertheless, "different jurors may be persuaded by different pieces of evidence, even when they agree [on] the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." (Internal quotation marks omitted.) *Schad* v. *Arizona*, 501 U.S. 624, 631–32, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991) (opinion announcing judgment). In other words, "a jury must come to agreement on the principal facts underlying its verdict—what courts have tended to call the elements of the offense.

But that requirement does not extend to subsidiary facts—what the [Supreme] Court has called 'brute facts.' " *United States* v. *Lee*, 317 F.3d 26, 36 (1st Cir.), cert. denied, 538 U.S. 1048, 123 S. Ct. 2112, 155 L. Ed. 2d 1089 (2003). "In the routine case, a general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction, even where an [information] alleges numerous factual bases for criminal liability." (Internal quotation marks omitted.) *United States* v. *Holley*, 942 F.2d 916, 925–26 (5th Cir. 1991), quoting *United States* v. *Beros*, 833 F.2d 455, 460 (3d Cir. 1987).

In *Douglas C.*, this court for the first time recognized that a duplicitous information may raise two distinct and separate kinds of unanimity claims: (1) unanimity as to a crime's elements, which occurs when a defendant is charged in a single count with having violated multiple statutory provisions, subsections, or clauses, and thus the court must determine whether the statutory provisions, subsections, or clauses constitute separate elements of the statute, thereby requiring jury unanimity, or alternative means of committing a single element, which do not require jury unanimity; and (2) unanimity as to instances of conduct, also known as a multiple acts or multiple offense claim, which occurs when a defendant is charged in a single count with having violated a single statutory provision, subsection, or clause on multiple, separate occasions. See *State* v. *Douglas C.*, supra, 345 Conn. 432–33, 441. Previously, our appellate courts have not distinguished between these two distinct unanimity claims. In *Douglas C.*, however, we explained that different tests apply to a claim of unanimity as to elements and a claim of unanimity as to instances of conduct. Id., 441.

In the present case, the defendant argues that all three counts were duplicitous because each was premised on multiple, separate instances of conduct, each of which could establish a separate violation of the same statute. In other words, he claims that his right to unanimity as to instances of conduct was violated, not his right to unanimity as to elements. As to a claim of unanimity as to instances of conduct, in *Douglas C.*, we adopted and applied the three-pronged test applied by a majority of federal courts of appeals:[6] "(1) Considering the allegations in the information and the evidence admitted at trial, does a single count charge the defendant with violating a single statute in multiple, separate instances? (2) If so, then does each instance of conduct establish a separate violation of the statute? If the statute contemplates criminalizing a continuing course of conduct, then each instance of conduct is not a separate violation of the statute but a single, continuing violation. To determine whether the statute contemplates criminalizing a continuing course of conduct, we employ our well established principles of statutory interpretation. Only if each instance of conduct constitutes a separate viola-

tion of the statute is a count duplicitous. And (3) if duplicitous, was the duplicity cured by a bill of particulars or a specific unanimity instruction? If yes, then there is no unanimity issue. If not, then a duplicitous count violates a defendant's right to jury unanimity but reversal of the defendant's conviction is required only if the defendant establishes prejudice [namely, that the duplicity created the genuine possibility that the conviction occurred as the result of different jurors concluding that the defendant committed different acts]." Id., 448. As to the second prong, to the extent we must interpret applicable statutes, well established principles directed by General Statutes § 1-2z guide our inquiry. See, e.g., *State* v. *Bischoff*, 337 Conn. 739, 746, 258 A.3d 14 (2021). In interpreting the statutes at issue to determine if the legislature criminalized a continuous course of conduct, we have explained that, "[a]t times, it may be easy to make this second determination. That is because, [i]n some cases the standard for individuating crimes is obvious—we count murders, for instance, by counting bodies. But in other cases, determining how many crimes were committed is much less clear. . . . In these more difficult cases, courts have examined the statute's language, its legislative history, and [other] case law regarding similar statutes . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Douglas C.*, supra, 345 Conn. 442.

"In examining the statutory language at issue . . . if the underlying criminal statute contemplates criminalizing a continuing course of conduct and the defendant has been charged with violating the statute by a continuing course of conduct, a single count premised on multiple, separate instances of conduct is not duplicitous when the multiple instances of conduct constitute 'a continuing course of conduct, during a discrete period of time[7] . . . .' To determine if a statute criminalizes only a single act, a continuous course of conduct, or both, courts must interpret the statute's language in the manner directed by . . . § 1-2z. . . . If a statute does criminalize a continuing course of conduct, then the court must determine whether the multiple instances of conduct alleged in fact constitute a continuous course of conduct by examining, among other things, whether the acts occurred within a relatively short period of time, were committed by one defendant, involved a single victim, and furthered a single, continuing objective." (Citations omitted; footnote added; footnotes omitted.) Id., 442–45.

## A

We begin by addressing count two of the information, which charged the defendant with risk of injury to a child in violation of § 53-21 (a) (2), because we already have addressed a similar claim in relation to this statute in *Douglas C.* We conclude that the defendant's claim fails under the second prong of the test applicable to

claims of unanimity as to instances of conduct and, therefore, that count two did not violate his constitutional right to jury unanimity.

Count two of the information charged the defendant with committing risk of injury to a child "in that on or about diverse dates between August 23, 2006, and December 25, 2010," at the residence of the victim's father, the defendant had contact with the victim's intimate parts and subjected the victim to "contact with [the defendant's] intimate parts . . . ." (Internal quotation marks omitted.) *State* v. *Joseph V.*, supra, 196 Conn. App. 722 n.12. At trial, as evidence of this unlawful contact, the state relied on testimony from the victim and T about the four specific, separate incidents of conduct discussed in footnote 4 of this opinion. As we previously noted, defense counsel cross-examined both the victim and T about these four incidents.

In closing argument to the jury, as to the element of contact with intimate parts, the prosecutor argued that the state had "to prove the defendant had contact with the intimate parts of the minor, [the victim], or the defendant—or the defendant subjected [the victim] to contact with the defendant's intimate parts; either way. . . . So, any of the sexual assaults that I just talked about, that counts; any one of those incidents counts— the oral sex, the anal sex—any of that counts for the sexual contact." In response, as previously discussed, defense counsel challenged the credibility of the victim and T both generally and specifically as to each of the four separate incidents.

After closing arguments, with regard to the element of intimate contact in the risk of injury charge in count two, the trial court instructed the jury: "The state must prove either that the defendant had contact with the child's intimate parts, [or] the defendant subjected the child to contact with the defendant's intimate parts. There need not be a touching of all the intimate parts. It is sufficient if any one of the intimate parts is touched." Similar to the instruction on sexual assault, the court concluded: "In order to convict the defendant on this count, you must be unanimous that at least one violation of this statute occurred between the defendant and [the victim] during the time frame indicated."

Section 53-21 (a) prohibits "[a]ny person . . . (2) [from having] contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subject[ing] a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . ." General Statutes § 53a-65 (8) defines "intimate parts" as "the genital area or any substance emitted therefrom, groin, anus or any substance emitted therefrom, inner thighs, buttocks or breasts."[8]

First, we must determine whether count two was premised on multiple, separate incidents of conduct. Count two of the information alleged that the defendant committed risk of injury to a child on "diverse dates" over the course of more than four years, and this allegation was supported by testimony concerning four specific, separate instances of conduct. This evidence shows that, as the case was presented to the jury, there was evidence of multiple, separate incidents of conduct, not a single incident.

Because count two was premised on multiple, separate incidents of conduct, we next must determine under prong two of the applicable test whether each incident could establish an independent violation of § 53-21 (a) (2). We hold that, although the state had discretion to charge the defendant with violating § 53-21 (a) (2) for each incident of conduct that occurred, the state properly charged and presented these incidents to the jury as a continuing course of conduct.

In *Douglas C.*, we held that § 53-21 (a) (2) criminalizes both a single incident of conduct and an ongoing course of conduct. See *State* v. *Douglas C.*, supra, 345 Conn. 464. Specifically, we explained that, under our prior case law interpreting this statute, risk of injury to a child may be charged under a continuing course of conduct theory. Id., 465. We explained that both the structure of the statute as a whole and its legislative history support this interpretation of § 53-21 (a) (2). See id., 466–69. Thus, when a defendant commits multiple, separate acts of having contact with the intimate parts of the same alleged victim as part of a continuing course of conduct, the state has discretion to charge the defendant either with multiple counts of having violated § 53-21 (a) (2), with each count premised on a single incident, or with a single count of having violated § 53-21 (a) (2) premised on a continuing course of conduct.

In the present case, the language of count two shows that the state charged the defendant with a continuing course of conduct in that, "on or about diverse dates between August 23, 2006, and December 25, 2010," he had contact with the victim's intimate parts and that the victim had contact with the defendant's intimate parts. *State* v. *Joseph V.*, supra, 196 Conn. App. 722 n.12. This language clearly contemplates more than a single instance of contact; it contemplates an ongoing course of conduct during this time period. Additionally, although the trial court noted that only one violation of the statute had to occur and the state argued that proof of only one alleged act was necessary to find the defendant guilty under count two, the state argued that multiple instances of contact occurred continuously between August 23, 2006, and December 25, 2010. Thus, § 53-21 (a) (2) criminalizes a continuing course of conduct, and the state charged the defendant with a continuing course of conduct.

Moreover, as to count two, the jury reasonably could have found that the multiple, separate incidents of conduct constituted a continuing course of conduct. The testimony regarding the four specific instances of conduct showed that, although the multiple incidents of sexual and indecent touching of intimate parts occurred over a prolonged period of time, these acts occurred with sufficient frequency to be considered a continuous course of conduct. See, e.g., *United States* v. *Root*, 585 F.3d 145, 154–55 (3d Cir. 2009) (multiple acts may be considered part of continuous course of conduct, even if conduct spanned years). Additionally, these incidents were committed by the same perpetrators—the defendant and T—involved a single victim, and furthered a single, continuing objective to touch the victim in a sexual and indecent manner.

As a result, although count two was premised on multiple, separate instances of conduct, these instances were properly alleged and presented to the jury as a continuous course of conduct, and not as independent violations of § 53-21 (a) (2). Accordingly, we conclude that count two, charging the defendant with a single violation of § 53-21 (a) (2), was not duplicitous, and thus the trial court's failure to grant the defendant's request for a specific unanimity instruction or a bill of particulars as to that count did not violate his constitutional right to jury unanimity.

B

Count one of the information charged the defendant with sexual assault in the first degree in violation of § 53a-70 (a) (2). Because there was trial testimony regarding four separate, specific instances of conduct, each of which could have constituted a violation of the statute, the defendant argues that this count was duplicitous. In turn, he argues that, because the trial court did not provide the jury with a specific unanimity instruction as defense counsel requested,[9] the jury verdict violated his right to jury unanimity and created the possibility that the jury found him guilty without having agreed on which instance of conduct he committed. We agree with the defendant.

The following additional procedural history is relevant to our consideration of the defendant's claim with respect to this count. Count one of the operative information charged the defendant with committing sexual assault in the first degree "on or about diverse dates between August 23, 2006, and December 25, 2010," by engaging in sexual intercourse (fellatio and anal intercourse) with the victim at the residence of the victim's father. *State* v. *Joseph V.*, supra, 196 Conn. App. 722 n.12. At trial, as evidence that the defendant had engaged in sexual intercourse with the victim, the state offered the testimony of both the victim and T regarding four distinct incidents of abuse, as well as the victim's gen-

eral testimony that he recalled that other incidents of sexual abuse had occurred but that they had " 'blurred together' " in his memory. Id., 717 n.3. Defense counsel cross-examined both the victim and T about the specific details regarding each of the four specific incidents of sexual abuse.

In closing argument, the prosecutor argued that "a plethora of evidence" supported the element of sexual intercourse, summarizing the four specific instances of sexual abuse and noting that "these same types of acts happened between [the victim] and the defendant alone, and [the victim] and the defendant and [T] . . . too many times to count." The prosecutor then argued that the jury only had "to believe it happened once. Any one time is enough to satisfy the element of sexual intercourse."

In response, defense counsel argued generally that the state's witnesses, including the victim and T, lacked credibility. Counsel walked the jury through the three alleged incidents about which the victim had testified, discussing inconsistencies in his testimony as to each particular incident. Defense counsel specifically challenged T's testimony regarding these incidents, arguing that T had admitted to having tailored his testimony to the victim's allegations.

After closing arguments, the trial court's jury charge included a general instruction regarding unanimity: "Remember that your verdict as to each count must be unanimous; all six jurors must agree as to the verdict as to each separate count." As to count one, charging sexual assault, the trial court instructed in relevant part: "In order to convict the defendant on this count you must be *unanimous that at least one violation of this statute by one of the methods alleged occurred* between the defendant and [the victim] during the time frame indicated. . . . [T]he state must prove each element of each offense, including identification of the defendant, beyond a reasonable doubt. If you unanimously find that the state has proved beyond a reasonable doubt each of the elements of the crime of sexual assault in the first degree, then you shall find the defendant guilty." (Emphasis added.)

Addressing the defendant's unanimity claim in the present case, we must first determine if count one was premised on multiple, separate acts and, if so, whether each act established a separate violation of the sexual assault statute.[10] We recognize that this may be a difficult task, as "[t]he line between multiple offenses and multiple means to the commission of a single continuing offense is often a difficult one to draw." (Internal quotation marks omitted.) *United States* v. *Davis*, 471 F.3d 783, 791 (7th Cir. 2006). One example of a multiple means case (i.e., claim of unanimity as to elements) is *State* v. *Anderson*, 211 Conn. 18, 557 A.2d 917 (1989), in which the state charged the defendant with two

counts of sexual assault in the first degree premised on multiple kinds of sexual intercourse—four instances of vaginal intercourse and two instances of fellatio—alleged to have been committed during a single criminal episode of relatively brief, temporal duration (approximately one hour). Id., 20–23. This court held that the multiple acts of sexual intercourse constituted alternative means of committing the element of sexual intercourse, and, thus, the jury did not have to unanimously agree as to which means occurred. Id., 34–35; see id., 35 ("[t]he several ways in which sexual intercourse may be committed under . . . § 53a-65 (2) are only one conceptual offense"); see also *United States* v. *Gordon*, 713 Fed. Appx. 424, 430 (6th Cir. 2017) (types of prohibited sexual conduct constitute alternative means of committing that conduct and do not constitute elements about which jury must be unanimous). Thus, in *Anderson*, the jury could, consistent with constitutional principles, find the defendant guilty of sexual assault in the first degree if the jurors were unanimous in finding, beyond a reasonable doubt, that some form of sexual intercourse occurred during the alleged incident.

*Anderson* did not address whether unanimity issues arise when the state charges only one count of sexual assault, but the record contains evidence of multiple, separate incidents of sexual intercourse. The line between a single incident comprised of various alternative means of committing sexual intercourse, on the one hand, and multiple, separate incidents of sexual intercourse, on the other, may be unclear at times and must be decided on a case-by-case basis based on the language of the count at issue, the evidence admitted in support of that count, and the kind of conduct the legislature intended to criminalize (single instance of conduct or continuing course of conduct).

In the present case, under the first prong of the test adopted in *Douglas C.*, we must first look at the allegations in the charge and the evidence admitted in support thereof to determine if count one was premised on multiple, separate incidents of conduct. See *State* v. *Douglas C.*, supra, 345 Conn. 448. Unlike the situation in *Anderson*, the information in the present case alleged that the defendant committed sexual assault on "diverse dates" over the course of more than four years. There was testimony concerning four specific instances of sexual intercourse, each of which occurred on different dates, at different times, and in different locations within the residence of the victim's father. From this testimony, it is clear that the present case does not involve multiple acts of sexual intercourse committed in the course of a single incident of brief, temporal duration. Rather, this evidence shows that, as the case was presented to the jury, there were multiple, separate incidents.

Additionally, unlike our risk of injury statute, under

the second prong of the test announced in *Douglas C.*, the language of § 53a-70 (a) (2) and our case law interpreting that language show that the legislature intended for each of these separate, specific incidents to be charged as separate violations of § 53a-70 (a) (2). Specifically, under § 53a-70 (a) (2), the state was required to establish that the defendant "engage[d] in sexual intercourse . . . ."[11] The statutory scheme does not define the term "engages," and thus we turn to the common dictionary definition of this term. See Black's Law Dictionary (11th Ed. 2019) p. 669 (defining "engage" as "[t]o employ or involve oneself; to take part in; to embark on"); Webster's Third New International Dictionary (2002) p. 751 (defining "engage" as "to employ or involve oneself . . . to take part . . . participate"). These definitions of "engage" do not provide any clarification as to whether the statute criminalizes a continuing course of conduct.[12] The concurring and dissenting justice (dissent) contends that, under these definitions of "engage," this term is "suggestive of ongoing conduct . . . ." This is true, but this merely creates ambiguity because the definitions also are suggestive of singular conduct. This ambiguity, however, is clarified when the term "engaged" is interpreted in its context, specifically, in relation to the phrase "sexual intercourse." The statutory scheme defines "sexual intercourse" as "vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen." General Statutes § 53a-65 (2). This definition suggests that the statute intended to criminalize each single act of sexual intercourse, which is defined in singular terms. This kind of language consistently has been interpreted as criminalizing only single acts. See *Cooksey* v. *State*, 359 Md. 1, 19–21, 752 A.2d 606 (2000) (reviewing case law from various states with similarly worded sexual assault statutes, all of which have been interpreted as not criminalizing continuous course of conduct). Thus, this language does not contemplate an ongoing, continuous course of conduct but, rather, penalizes a single instance of sexual intercourse.

Interpreting § 53a-70 to criminalize each separate act of sexual intercourse and not a continuous course of conduct is also supported by our "well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so." (Internal quotation marks omitted.) *State* v. *Ruiz-Pacheco*, 336 Conn. 219, 235, 244 A.3d 908 (2020). Specifically, we can infer from the legislature's use in other statutes of the phrase "course of conduct,"[13] as well as other phrases that connote more than one act,[14] that the legislature knows how to criminalize a course of conduct when it wants to do so. From the fact that the legislature did not do so in § 53a-70, we may infer that it did not

intend to criminalize a continuous course of conduct.

Our long-standing precedent interpreting § 53a-70 lends further support to this interpretation. It is well established that, in determining the plain meaning of a statute, we look to prior case law defining the statute. See, e.g., *Redding Life Care, LLC* v. *Redding*, 331 Conn. 711, 719, 207 A.3d 493 (2019) ("we must construe the statute in conformity with prior case law interpreting it"); *State* v. *Moreno-Hernandez*, 317 Conn. 292, 299, 118 A.3d 26 (2015) ("[i]n interpreting the [statutory] language . . . [we] are bound by our previous judicial interpretations of the language and the purpose of the statute" (internal quotation marks omitted)). General Statutes (Rev. to 1975) § 53a-72 (a), which was repealed in 1975; see Public Acts 1975, No. 75-619, § 7; criminalized rape, and was a precursor to our current sexual assault statute, used the same phrase at issue in the present case: "A male is guilty of rape in the first degree when he *engages in sexual intercourse* with a female . . . ." (Emphasis added.) In *State* v. *Frazier*, 185 Conn. 211, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982), this court, in interpreting General Statutes (Rev. to 1972) § 53a-72, followed the lead of the Oklahoma courts and explained that "rape is not a continuous offense. . . . There is ample authority holding that each separate act of forcible sexual intercourse constitutes a separate crime. . . . A different view would allow a person who has committed one sexual assault [on] a victim to commit with impunity many other such acts during the same encounter. The classic test of multiplicity is whether the legislative intent is to punish individual acts separately or to punish only the course of action which they constitute. . . . [W]e believe the legislative intention was that each assault should be deemed an additional offense." (Citations omitted.) Id., 229–30. Since *Frazier*, and after the repeal of General Statutes (Rev. to 1975) § 53a-72, this interpretation of the phrase "engages in sexual intercourse" has been applied to § 53a-70. See *State* v. *Anderson*, supra, 211 Conn. 26 (The court quoted *Frazier* in explaining that, "[i]n addressing legislative intent with regard to multiple punishments for sexual assaults, we have stated that each separate act of forcible sexual intercourse constitutes a separate crime. . . . Thus, each act of sexual assault is punishable separately." (Citations omitted; internal quotation marks omitted.)); see also *State* v. *Snook*, 210 Conn. 244, 262, 555 A.2d 390 (same), cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989);[15] *State* v. *Ayala*, 154 Conn. App. 631, 654, 106 A.3d 941 (2015) (same), aff'd, 324 Conn. 571, 153 A.3d 588 (2017); *State* v. *Giannotti*, 7 Conn. App. 701, 709, 510 A.2d 451 (citing *Frazier* in holding that each individual act or attempted act of forcible sexual intercourse constitutes separate crime), cert. denied, 201 Conn. 804, 513 A.2d 700 (1986).

For approximately forty years, the Appellate Court

has rejected the dissent's interpretation of § 53a-70.[16] Specifically, in *State* v. *Cassidy*, 3 Conn. App. 374, 489 A.2d 386 (*Borden, J.*), cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985), the defendant, who had been charged with and convicted of multiple counts of sexual assault under § 53a-70, argued "that he should . . . have been tried on [only] one count of sexual assault, on the theory that only one act of sexual assault was alleged, albeit one involving several acts of sexual intercourse." Id., 388. In rejecting this argument, the Appellate Court cited to *Frazier* and noted that "[t]his argument was rejected under the predecessor to . . . § 53a-70. . . . We reject it under . . . § 53a-70 as well." (Citation omitted.) Id. In so holding, the court was not persuaded by the defendant's contention that, "while the legislative intent of the repealed statute [§ 53a-72] was to punish each individual act of assault separately, the legislature, by enacting the current statute, intended only to punish the total course of conduct as one offense. As under the prior statute, however, each assault [on] the victim involved a separate act of will on the part of the defendant and a separate indignity [on] the victim. . . . [T]he legislative intention was that each assault should be deemed an additional offense. . . . To interpret the statute otherwise would be to strip it of all its sense. [T]he application of common sense to the language of a penal law is not to be excluded in a way which would involve absurdity or frustrate the evident design of the lawgiver. . . . There is ample authority holding that each separate act of forcible sexual intercourse constitutes a separate crime. . . . A different view would allow a person who has committed one sexual assault [on] a victim to commit with impunity many other such acts during the same encounter." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 388–89.

The dissent argues that our reliance on *Frazier* and *Cassidy* is misplaced because they involved multiplicity, not duplicity, which, in his view, "present[s] a fundamentally different question." But it does not. Not for these purposes. Both the test for multiplicity in the double jeopardy context and the test for duplicity in the unanimity context require that we construe the language of our sexual assault statute to arrive at the legislature's intent in enacting it. How we interpret statutory language does not change based on the claim at issue. We reject the dissent's conclusion that the most reasonable reading of our sexual assault statute and cases interpreting its language is that prosecutors, in their discretion, can choose to charge crimes either way—as a course of conduct or as a single act—based on a tradition of prosecutorial discretion that is not supported by our criminal statutes and in which the legislature has not acquiesced. If acquiescence were important to determining a statute's meaning, the legislature's acquiescence in how our appellate courts have

interpreted the statute is a more compelling case.[17]

Accordingly, guided by § 1-2z and our prior case law interpreting § 53a-70, we conclude that the plain and unambiguous language of § 53a-70 shows that the legislature intended to criminalize only single acts of sexual intercourse and not a continuing course of conduct. This court, therefore, should not consider legislative history.[18] As a result, when we apply the well established legal principles regarding statutory construction, we find that our sexual assault statute does not criminalize a continuing course of conduct.

Moreover, even if this court were allowed to create and apply common-law exceptions in determining the meaning of a statute; see footnote 7 of this opinion; this court has not recognized a common-law exception for a continuing course of sexual assault, even in cases involving children. Cf. *Gilson* v. *State*, 8 P.3d 883, 899 (Okla. Crim. App. 2000), cert. denied, 532 U.S. 962, 121 S. Ct. 1496, 149 L. Ed. 2d 381 (2001). Accordingly, we conclude that the information charging the defendant with a single count of sexual assault premised on multiple, separate instances of conduct, each of which could have supported a separate offense, was duplicitous and violated the defendant's right to jury unanimity. This is consistent with decisions of other state courts that have applied the majority test to this issue. See, e.g., *State* v. *Arceo*, 84 Haw. 1, 30, 928 P.2d 843 (1996); *Cooksey* v. *State*, supra, 359 Md. 19–21.

As a result, in the absence of a unanimity instruction, the state was required to either charge the defendant with multiple counts of sexual assault in the first degree, each premised on a separate instance of conduct, or limit the single count it did charge to a single instance of conduct. Alternatively, the state could have charged as it did, as long as a specific unanimity instruction was given. The state, however, using similar language as contained in count two, attempted to charge count one under a continuing course of conduct theory, and the trial court did not give a specific unanimity instruction.[19] The state was not permitted to do so under the plain language of § 53a-70, and thus the state's manner of charging under count one does not cure the count's duplicity.

Nevertheless, the dissent relies on prior case law from the Appellate Court to argue that our courts have recognized a policy in favor of affording the prosecutor discretion in charging in cases involving sexual assault of a child. Although this court has not recognized a common-law exception for a continuing course of sexual assault, we are aware that this state's case law regarding unanimity and ongoing sexual assault of children has created some confusion on this issue, likely owing both to our belated recognition of persuasive federal case law, as well as to an understandable motivation to accommodate the difficulties inherent in prosecuting

such cases involving children, particularly traumatized children. For example, the Appellate Court has distinguished between sexual assault cases in which there is specific testimony regarding multiple, separate incidents of sexual assault, and cases in which there is only general testimony that multiple incidents of sexual assault occurred but precise details regarding time and location are unknown. This occurs commonly in cases involving the ongoing sexual assault of children. This line of cases has caused confusion in the Appellate Court, including in the present case, over whether an information is duplicitous or whether any duplicity creates a risk of a nonunanimous verdict when a sexual assault case involves only general testimony about multiple incidents of sexual assault. See *State* v. *Joseph V.*, supra, 196 Conn. App. 737–38 (citing cases). To the extent the defendant relies on this case law to argue that the Appellate Court has held that a single count of sexual assault premised on specific testimony of multiple, separate incidents of conduct may be alleged under a continuing course of conduct theory, we disagree. Rather, these cases show that, when there is only general testimony regarding the ongoing sexual assault of a child, a defendant more likely than not will not be prejudiced by a single count of sexual assault premised on multiple incidents of conduct.

This issue first arose in *State* v. *Saraceno*, 15 Conn. App. 222, 229, 545 A.2d 1116, cert. denied, 209 Conn. 823, 552 A.2d 431 (1988), and cert. denied, 209 Conn. 824, 552 A.2d 432 (1988), in which the defendant claimed that the information was duplicitous because the two counts of sexual assault of which he was convicted each alleged the commission of a single crime based on multiple, separate incidents of sexual intercourse. Id., 227–28. In resolving this claim, the court addressed the five policy considerations underlying the doctrine of duplicity. See id., 229–32. As to the possible lack of jury unanimity, the Appellate Court concluded "that with regard to the evidence adduced . . . it was not possible for the jury to return a verdict [that] was not unanimous. Given the complainant's age and her relative inability to recall with specificity the details of separate assaults, the jury was not presented with the type of detail laden evidence [that] would engender differences of opinion on fragments of her testimony. In other words, the bulk of the state's case rested on the credibility of the young complainant. When she testified . . . that on many occasions the defendant forced her to engage in fellatio while in a motor vehicle parked on the banks of the Connecticut River, the jury was left, primarily, only with the decision of whether she should be believed. With such general testimony, the spectre of lack of unanimity cannot arise. . . . Under the specific circumstances . . . [the court] conclude[d] that the defendant was not prejudiced by the potential lack of jury unanimity." Id., 230–31.

In so holding, the court clearly focused on whether the defendant was prejudiced by the potential lack of unanimity, specifically, whether the jury possibly was confused. See id., 229–31. The court concluded that, in light of the nature of the general testimony, there was no possibility that the jury had a difference of opinion as to which acts the defendant had committed because the nature of the testimony did not allow the jury to be divided as to which instance of conduct occurred but, rather, required the jury to credit all or none of the victim's testimony. See id., 230. In other words, the court determined that any potential duplicity, assuming it existed, was not harmful. *Saraceno* did not hold that a single count of sexual assault premised on specific testimony of multiple separate instances of conduct may be alleged under a continuing course of conduct theory. Thus, under neither the statutory scheme at issue nor our state's common law may first degree sexual assault be charged as a continuing course of conduct crime when premised on specific testimony of multiple, separate incidents of conduct.[20] As a result, in the absence of a unanimity instruction, the state was required either to charge the defendant with four counts of sexual assault in the first degree, each premised on a separate instance of conduct, or to limit the single count it did charge to a single instance of conduct. Alternatively, the state could have charged as it did without offending the defendant's right to jury unanimity if the trial court had given a specific unanimity instruction. Accordingly, because count one is premised on multiple, separate incidents of conduct, each of which could independently establish a violation of § 53a-70 (a) (2), that count was rendered duplicitous.

Because we hold that a single count of sexual assault premised on specific testimony of multiple separate acts, committed other than in the course of a single criminal episode of relatively brief, temporal duration, is duplicitous and violates a defendant's right to jury unanimity when no specific unanimity instruction is given, we must determine whether this duplicity prejudiced the defendant. In light of the evidence of multiple, separate instances of sexual intercourse, we conclude that the jury reasonably could have interpreted the trial court's instruction that it "must be unanimous that at least one violation of this statute by one of the methods alleged occurred between the defendant and [the victim] during the time frame indicated" to require it to be unanimous as to whether *an* instance of sexual intercourse occurred but not to require it to be unanimous as to *which* instance of sexual intercourse occurred. This is especially so in light of the specific nature of the testimony and defense counsel's extensive cross-examination and closing argument directed at unique credibility concerns related to each incident, as well as the prosecutor's closing argument that any of the alleged incidents would establish the element of sexual

intercourse.[21] As a result, the state's concession of harm if we find any error is prudent. The duplicitous nature of count one created the potential for the jury to be confused or to disagree about which of the various acts of sexual intercourse the defendant committed, thereby prejudicing him. Accordingly, we reverse the defendant's conviction of sexual assault in the first degree and remand the case for a new trial as to that count.

C

We next apply the *Douglas C.* test to count three, which charged the defendant with conspiracy to commit risk of injury to a child in violation of §§ 53-21 (a) (2) and 53a-48 (a). The defendant argues that he was charged only with a single violation of § 53a-48 (a) but that there was testimony showing that he and T had agreed to commit two separate conspiracies: (1) when the defendant and T exchanged a "look" before the first incident; and (2) when the defendant touched the victim in the living room while T watched. See footnote 4 of this opinion. We disagree.

Count three of the information alleged "[t]hat the said [defendant] did commit the crime of conspiracy to commit risk of injury to a child in violation of [§§] 53a-48 (a) and 53-21 (a) (2) in that on or about diverse dates between August 23, 2006, and December 25, 2010, at or near [the new residence of the victim's father], the said [defendant], with intent that conduct constituting the crime of risk of injury to a child be performed, did agree with one or more persons, namely, [T], to engage in and cause the performance of such conduct, and any one of them committed an overt act in pursuance of such conspiracy." (Internal quotation marks omitted.) *State* v. *Joseph V.*, supra, 196 Conn. App. 722 n.12.

At trial, to show that the defendant and T had agreed to enter into a conspiracy, the state presented testimony that, immediately prior to the first specific incident of abuse, the defendant and T shared a "look." Additionally, there was testimony that, during the third specific incident of abuse, the defendant sexually abused the victim while T was in the room and watched the abuse occur. See footnote 4 of this opinion.

In closing argument as to this count, the prosecutor discussed the first specific incident of abuse. As evidence of an agreement, he pointed to T's testimony that T and the defendant, who were best friends, first cousins, and in a sexual relationship, shared a look before the defendant began touching the victim. The prosecutor also argued that "[t]here's other incidents where [T] and [the] defendant would do this to [the victim]. [The victim] can't remember all of them and the details because it happened too many times." He then referred to the incident in which T watched the defendant sexually assault the victim: "I submit to you there's an agreement if there's—if one person's sexually

assaulting a child and the other person, the defendant, is awaiting his turn, or vice-versa, the defendant's sexually assaulting a child and the other person is awaiting their turn, that's evidence of an agreement. . . . [T]he ongoing course of conduct and sexual assaults done together [show] they entered into a conspiracy to sexually assault [the victim], not on an infrequent basis; they kept sexually assaulting him; that's all those times of the conspiracy."

A person is guilty of conspiracy under § 53a-48 "when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy." General Statutes § 53a-48 (a); see *State* v. *Pond*, 315 Conn. 451, 467, 108 A.3d 1083 (2015). The defendant argues that a single count of conspiracy may be premised on only an agreement to commit a single conspiracy but that there was evidence of two separate agreements to commit two separate conspiracies to commit risk of injury to a child. To determine whether count three was premised on multiple, separate acts requires that we review our case law interpreting § 53a-48 (a). This court continuously has interpreted the plain language of § 53a-48 (a) as criminalizing an agreement to commit a single conspiracy: "Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one. . . . The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute . . . ." (Internal quotation marks omitted.) *State* v. *Ortiz*, 252 Conn. 533, 559, 747 A.2d 487 (2000). As a result, for double jeopardy purposes, "[a] single agreement to commit several crimes constitutes one conspiracy. . . . [M]ultiple agreements to commit separate crimes constitute multiple conspiracies. . . . We consider several factors in determining whether multiple prosecutions are permitted for [multiple] conspiracies, including . . . the participants, the time period, similarity of the crimes, and the existence of common acts, objectives and a common location." (Citations omitted; internal quotation marks omitted.) *State* v. *Guerrera*, 167 Conn. App. 74, 110, 142 A.3d 447 (2016), aff'd, 331 Conn. 628, 206 A.3d 160 (2019).

As a result, a single count of conspiracy may be premised on an agreement to commit only a single conspiracy. Only if the evidence offered at trial shows the existence of two separate conspiracies is a single count of conspiracy duplicitous. See *United States* v. *Lapier*, 796 F.3d 1090, 1096 (9th Cir. 2015) ("[J]urors must still unanimously agree that the defendant is guilty of participating in a particular conspiracy . . . . [T]he evidence

at trial tended to show at least two separate conspiracies—one between [the defendant] and his first [drug] supplier . . . and a later one between [the defendant] and his second [drug] supplier . . . but not a single overarching conspiracy." (Citations omitted.)).

In support of his argument of two separate conspiracies, the defendant contends that the testimony regarding the "look" that he and T shared was evidence of an agreement to commit the first, and only the first, incident of abuse. He further argues that the testimony regarding T's presence during the third specific incident showed an agreement to commit that, and only that, particular incident of abuse. It is well established, however, that a conspiracy may be alleged as a continuing offense. See, e.g., *State* v. *Hayes*, 127 Conn. 543, 605–606, 18 A.2d 895 (1941); see also id., 606 (" '[b]ut when the plot contemplates bringing to pass a continuous result which will not continue without continuous cooperation of the conspirators to keep it up, and there is such continuous cooperation, it is a perversion of natural thought and of natural language to call such continuous cooperation a cinematographic series of distinct conspiracies, rather than to call it a single one' "). This is consistent with precedent from other states holding that a conspiracy may be alleged as a continuous course of conduct crime, and thus a single count of conspiracy premised on a continuous course of conduct is not duplicitous. See, e.g., *Commonwealth* v. *Albert*, 51 Mass. App. 377, 385, 745 N.E.2d 990 ("[n]o unanimity instruction was required because a conspiracy refers to a continuing course of conduct, rather than a succession of clearly detached incidents"), appeal denied, 434 Mass. 1104, 752 N.E.2d 240 (2001); see also *People* v. *Davis*, 488 P.3d 186, 192 (Colo. App. 2017) ("A single crime of conspiracy can be defined this broadly. . . . No unanimity instruction was required because a conspiracy refers to a continuing course of conduct, rather than a succession of clearly detached incidents." (Citation omitted; internal quotation marks omitted.)), cert. denied, Colorado Supreme Court, Docket No. 17SC386 (April 9, 2018).

The defendant's claim then comes down to whether count three was premised on an agreement between the defendant and T to commit two separate conspiracies or a single, ongoing conspiracy. The information and the prosecutor's closing argument clearly show that count three was premised on a single, ongoing conspiracy, not on two separate conspiracies. Evidence that the defendant and T shared a "look" and later, during a separate incident, that T was present for the defendant's abuse of the victim merely constituted separate proof of their ongoing agreement to commit the crime of risk of injury against the victim through contact with intimate parts. As charged, argued and proven, this was not evidence of two separate conspiracies.

Our conclusion that count three was premised on a single, ongoing conspiracy is supported by the fact that these two incidents involved the same participants and similar conduct (contact with intimate parts), occurred in various areas of a single location (the residence of the victim's father), and had the same objective (contact with intimate parts between the defendant and the victim). Accordingly, we conclude that count three was not premised on multiple, separate acts and, thus, was not duplicitous.

## II

Alternatively, the defendant claims that, if the second and third counts alleging risk of injury and conspiracy did not violate his right to jury unanimity as to instances of conduct, these counts nonetheless violate his right to jury unanimity as to elements because, as the Appellate Court held, each count was premised on multiple violations of the alternative types of conduct prohibited by § 53-21 (a) (2). Specifically, the defendant argues that the statutory requirement that the state prove that either he had contact with the victim's intimate parts or subjected the victim to contact with his intimate parts are historically separate offenses constituting separate elements, and thus are facially duplicitous. Because the trial court denied his request for a bill of particulars or a specific unanimity instruction, the defendant argues, this duplicity violated his right to a unanimous jury verdict. He argues that the Appellate Court properly held that counts two and three created a risk of a non-unanimous verdict but committed error by applying the wrong test, and thus improperly held that his constitutional right to jury unanimity was not violated. We agree with the defendant that this court and the Appellate Court have been applying the wrong test to claims of unanimity as to elements, but we disagree that, under the proper test, the statutory language at issue created two separate elements, thereby violating the defendant's right to jury unanimity.

Initially, we must determine what test to apply to claims of unanimity as to elements. As discussed in part I of this opinion, these claims require a court to determine whether the statutory language at issue creates alternative means of committing a single element or, instead, creates separate elements, thereby constituting separate crimes that must be charged in separate counts. Understandably, as to the defendant's claim of unanimity as to elements, the Appellate Court applied the test this court announced in *State* v. *Famiglietti*, 219 Conn. 605, 619–20, 595 A.2d 306 (1991), and held that, under this test, because counts two and three were premised on the violation of multiple statutory clauses, counts two and three were duplicitous but that, because the trial court did not specifically sanction a nonunanimous verdict, this error was harmless. See *State* v. *Joseph V.*, supra, 196 Conn. App. 745–48.

In *Famiglietti*, this court applied a multifactor test to determine whether alternative statutes, statutory subsections, or statutory clauses constituted separate elements or alternative means: "We first review the instruction that was given to determine whether the trial court has sanctioned a nonunanimous verdict. If such an instruction has not been given, that ends the matter. Even if the instructions at trial can be read to have sanctioned such a nonunanimous verdict, however, we will remand for a new trial only if (1) there is a conceptual distinction between the alternative acts with which the defendant has been charged, and (2) the state has presented evidence to support each alternative act with which the defendant has been charged." (Internal quotation marks omitted.) *State* v. *Reddick*, 224 Conn. 445, 453, 619 A.2d 453 (1993), quoting *State* v. *Famiglietti*, supra, 219 Conn. 619–20. This test, at times referred to as the *Famiglietti* test, is consistent with the test the United States Court of Appeals for the Fifth Circuit applied in *United States* v. *Gipson*, 553 F.2d 453 (5th Cir. 1977), which this court consistently has applied in unanimity cases both prior to and after deciding *Famiglietti*. See, e.g., *State* v. *Tucker*, 226 Conn. 618, 644–48, 629 A.2d 1067 (1993); *State* v. *Anderson*, supra, 211 Conn. 34–35.

Approximately one month before this court issued its decision in *Famiglietti*, however, the United States Supreme Court rejected the *Gipson* test for determining whether alternative statutes, statutory subsections, or statutory clauses constitute alternative elements, requiring jury unanimity, or alternative means of committing a single element, not requiring jury unanimity. Specifically, in *Schad*, the defendant claimed that Arizona's first degree murder statute violated his sixth amendment right to unanimity because it did not require the jury to be unanimous as to one of the statute's two alternative theories of committing first degree murder —premeditated murder or felony murder. *Schad* v. *Arizona*, supra, 501 U.S. 630 (opinion announcing judgment). The court reframed the defendant's claim as a due process challenge "to Arizona's characterization of [first degree] murder as a single crime as to which a verdict need not be limited to any one statutory alternative, as against which he argue[d] that premeditated murder and felony murder are separate crimes as to which the jury must return separate verdicts." Id., 630–31 (opinion announcing judgment); see *State* v. *Douglas C.*, supra, 345 Conn. 437 n.10. In other words, the court was tasked with deciding whether the two mental states—"the one being premeditation, the other the intent required for murder combined with the commission of an independently culpable felony"—constituted either alternative means of satisfying the mens rea element, or separate elements, requiring separate verdicts or a specific unanimity instruction. *Schad* v. *Arizona*, supra, 632 (opinion announcing judgment);

see *State* v. *Douglas C.*, supra, 437 n.10.

The court in *Schad* acknowledged that it is difficult to discern when alternative mentes reae or actus rei constitute alternative means of committing the element at issue, and when the "differences between means become so important that they may not reasonably be viewed as alternatives to a common end, but must be treated as differentiating what the [c]onstitution requires to be treated as separate offenses." *Schad* v. *Arizona*, supra, 501 U.S. 633 (opinion announcing judgment). The court noted that the Fifth Circuit in *Gipson* had "attempted to define what constitutes an immaterial difference as to mere means and what constitutes a material difference requiring separate theories of crime to be treated as separate offenses subject to separate jury findings . . . ." Id., 633–34 (opinion announcing judgment).

In *Gipson*, the defendant was charged with and convicted of a single count of violating 18 U.S.C. § 2313 (1976), which prohibited knowingly "receiv[ing], conceal[ing], stor[ing], barter[ing], sell[ing] or dispos[ing] of" any stolen motor vehicle or aircraft moving in interstate commerce. (Internal quotation marks omitted.) *United States* v. *Gipson*, supra, 553 F.2d 455 n.1. The District Court instructed the jury that it did not have to agree on which of the enumerated acts the defendant had committed. Id., 455–56. Applying the two-pronged test discussed previously, the Fifth Circuit reversed the District Court's judgment, reasoning that the defendant's right to jury unanimity was violated by the joinder, in a single count, of "two distinct conceptual groupings," receiving, concealing, and storing forming the first grouping (referred to by the court as "housing"), and bartering, selling, and disposing ("marketing") constituting the second grouping. Id., 458–59. Specifically, the court in *Gipson* held that the alternative acts of selling and receiving a stolen vehicle were conceptually distinct such that they constituted alternative elements, not alternative means of committing a single element. See id., 458.

In reviewing *Gipson*, the court in *Schad* stated that it was "not persuaded that the *Gipson* approach really answers the question, however. Although the classification of alternatives into 'distinct conceptual groupings' is a way to express a judgment about the limits of permissible alternatives, the notion is too indeterminate to provide concrete guidance to courts faced with verdict specificity questions. . . . This is so because conceptual groupings may be identified at various levels of generality, and we have no a priori standard to determine what level of generality is appropriate." (Citations omitted.) *Schad* v. *Arizona*, supra, 501 U.S. 635 (opinion announcing judgment).

Rather than follow *Gipson*, the court in *Schad* held that, to determine whether the legislature intended

either to enumerate alternative means of satisfying a single element or to define separate elements, "our sense of appropriate specificity is a distillate of the concept of due process with its demands for fundamental fairness . . . and for the rationality that is an essential component of that fairness. In translating these demands for fairness and rationality into concrete judgments about the adequacy of legislative determinations, we look both to history and wide practice as guides to fundamental values, as well as to narrower analytical methods of testing the moral and practical equivalence of the different mental states that may satisfy the mens rea element of a single offense. The [i]nquiry is undertaken with a threshold presumption of legislative competence to determine the appropriate relationship between means and ends in defining the elements of a crime." (Citation omitted.) Id., 637–38 (opinion announcing judgment).

Federal courts of appeals have explained that, "[e]ven though this rule [under *Schad*] speaks in terms of a mens rea analysis, it rejects the *Gipson* model for analyzing unanimity problems. Thus the *Schad* rule should apply equally to analysis of multiple [actus reus] elements as well as analysis of multiple mens rea elements." *United States* v. *Sanderson*, 966 F.2d 184, 188 (6th Cir. 1992). As a result, in analyzing both multiple actus reus elements and multiple mens rea elements, federal courts of appeals have taken their cues from *Schad* and considered the statutory language, relevant legal traditions and practices, the overall structure of the statute at issue, its legislative history, moral and practical equivalence between the alternative actus rei or mentes reae, and any other implications for unfairness associated with the absence of a specific unanimity instruction. See, e.g., *United States* v. *Lee*, supra, 317 F.3d 37; *United States* v. *Sanderson*, supra, 188.

This court never has addressed the effect of the Supreme Court's analytical framework in *Schad* on our adoption of the *Gipson* test as applied in *Famiglietti*.[22] Federal appellate courts, however, including the Fifth Circuit, specifically have held that *Schad* overruled and replaced the *Gipson* test. See, e.g., *Maxwell* v. *Thaler*, 350 Fed. Appx. 854, 857 (5th Cir. 2009) (applying *Schad*, not *Gipson*), cert. denied, 559 U.S. 978, 130 S. Ct. 1698, 176 L. Ed. 2d 191 (2010); *Reed* v. *Quarterman*, 504 F.3d 465, 481–82 (5th Cir. 2007) (referring to *Gipson* test as "former test" and applying *Schad* test); *United States* v. *Verbitskaya*, 406 F.3d 1324, 1334 (11th Cir. 2005) (*Schad* rejected *Gipson* analysis), cert. denied, 546 U.S. 1096, 126 S. Ct. 1095, 163 L. Ed. 2d 864 (2006); see also *United States* v. *Sanderson*, supra, 966 F.2d 188 ("we interpret *Schad* to hold that there must be a commonsense determination of a subject statute's application and purpose in light of traditional notions of due process and fundamental fairness").

Since *Schad*, a majority of federal courts of appeals, including the United States Court of Appeals for the Second Circuit, have applied the *Schad* test to determine whether multiple statutes, statutory provisions, or statutory clauses constitute separate elements or alternative means of committing a single element. See, e.g., *United States* v. *Gonzalez*, 905 F.3d 165, 185 (3d Cir. 2018), cert. denied,     U.S.    , 139 S. Ct. 2727, 204 L. Ed. 2d 1120 (2019); *United States* v. *Mickey*, 897 F.3d 1173, 1181 (9th Cir. 2018); *United States* v. *McIntosh*, 753 F.3d 388, 392–93 (2d Cir. 2014); *United States* v. *Allen*, 603 F.3d 1202, 1213 (10th Cir.), cert. denied, 562 U.S. 1076, 131 S. Ct. 680, 178 L. Ed. 2d 505 (2010); *United States* v. *Hurt*, 527 F.3d 1347, 1355 (D.C. Cir. 2008); *Reed* v. *Quarterman*, supra, 504 F.3d 481; *United States* v. *Verbitskaya*, supra, 406 F.3d 1334; *United States* v. *Lee*, supra, 317 F.3d 37; *United States* v. *Sanderson*, supra, 966 F.2d 188. In light of the court's holding in *Schad* and its progeny, we agree with the defendant that the *Gipson* test, as adopted in *Famiglietti*, has been replaced by the *Schad* test,[23] and thus we apply the latter in the present case to analyze the defendant's claim.

We begin with the text of § 53-21 (a): "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony for a violation of subdivision (2) of this subsection, except that, if the violation is of subdivision (2) of this subsection and the victim of the offense is under thirteen years of age, such person shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."[24] It is not clear from the plain language of § 53-21 (a) (2) whether the phrase, "has contact with the intimate parts . . . of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person," creates two separate elements or alternative means of having contact with intimate parts. Our case law regarding § 53-21 (a) (2),[25] however, suggests that this statutory language creates alternative means, not elements. Specifically, under *Gipson*, we previously have held that these two statutory requirements are not conceptually distinct; rather, the only distinction between the two forms of contact is whether the defendant subjects the victim "to either active or passive participation in sexual activity . . . ." *State* v. *Spigarolo*, 210 Conn. 359, 391–92, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). Although we hold today that the *Gipson* test is no longer applicable to claims of unanimity as to elements, our analysis in *Spigarolo* is relevant to our analysis under

the *Schad* test to the extent it shows our legal traditions and practices regarding our interpretation of this statutory language. See *United States* v. *Lee*, supra, 317 F.3d 37. Additionally, to the extent the statutory language is ambiguous, the legislative history shows that subsection (a) (2) was created to distinguish sexual contact from the nonsexual conduct prohibited under subsection (a) (1). Thus, the purpose of subsection (a) (2) is to criminalize sexual contact with a child that would likely impair the health or morals of that child. The statutory language merely establishes two alternative ways of having sexual contact with a child. This construction is supported by the fact that this court is unaware of any moral or practical distinction between subjecting a child to passive participation in sexual activity (the defendant's having contact with the child's intimate parts) and active participation in sexual activity (the defendant's forcing the child to have contact with the defendant's intimate parts). Accordingly, we conclude that the language of § 53-21 (a) (2) creates two alternative ways of satisfying the element of contact with intimate parts, and thus counts two and three were not duplicitous.

The judgment of the Appellate Court is reversed insofar as that court affirmed the defendant's conviction of sexual assault in the first degree and the case is remanded to that court with direction to reverse the defendant's conviction of that offense and to remand the case to the trial court for a new trial with respect to that offense only; the judgment of the Appellate Court is affirmed insofar as that court affirmed the defendant's conviction of risk of injury to a child and conspiracy to commit risk of injury to a child.

In this opinion McDONALD and ECKER, Js., concurred.

* In accordance with our policy of protecting the privacy interests of victims of the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

** December 13, 2022, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Although § 53a-70 has been amended since the events at issue in this appeal; see Public Acts 2015, No. 15-211, § 16; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 53a-70.

[2] Although § 53-21 has been amended several times since the events at issue in this appeal; see, e.g., Public Acts 2015, No. 15-205, § 11; Public Acts 2013, No. 13-297, § 1; and Public Acts 2007, No. 07-143, § 4; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 53-21.

[3] T also was arrested, but, prior to his criminal trial, he entered into a written plea deal with the state in which he agreed to cooperate fully and truthfully with respect to the investigation and the charges brought against the defendant. *State* v. *Joseph V.*, supra, 196 Conn. App. 716 n.2. In exchange for T's testimony and cooperation, the state agreed to limit the charges

against him to risk of injury to a child in violation of § 53-21 (a) (1) and sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A), and to recommend a total effective sentence of five years of incarceration, execution suspended after eighteen months, followed by five years of probation, including sex offender registration. Id.

[4] Both the victim and T testified as to the first incident of abuse, although their testimony conflicted regarding who initiated the abuse. *State* v. *Joseph V.*, supra, 196 Conn. App. 717 and n.4. From this testimony, the jury reasonably could have found that "[t]he first time that the defendant sexually abused the victim occurred in T's bedroom after the defendant, T, and the victim had been playing video games. . . . The defendant and T exchanged a knowing glance just before the defendant put his hand on the victim's hand and made the victim stroke his penis. Thereafter, T and the defendant took turns rubbing their penises between the victim's legs, near his buttocks. At one point during this incident, T attempted to anally penetrate the victim with his penis while the defendant made the victim perform oral sex on him." (Footnote omitted.) Id.

The victim also testified regarding "[a]nother incident involving the defendant [that] occurred when he and the victim were watching television in the bedroom of the victim's father. While the defendant and the victim were lying in bed, the defendant took the victim's hand and made the victim stroke his penis. Then, the defendant made the victim, who was fully clothed, perform oral sex on him." Id., 718.

As to the third incident, T alone testified that "[t]he defendant sexually abused the victim during another incident that occurred in T's presence, although T did not participate. This incident occurred at night . . . in the living room, which was downstairs at the residence of the victim's father. The defendant partially undressed himself and partially undressed the victim before making the victim perform oral sex on him. The defendant also rubbed his penis between the victim's legs." (Footnote omitted.) Id.

As to the fourth incident, the victim testified that, "when [he] was ten years of age, [he and] the defendant . . . were alone together at the residence of the victim's father after other family members had left to purchase food. The defendant, who was on the couch in the living room with the victim, partially removed his pants and the victim's pants and anally penetrated the victim with his penis. Thereafter, the defendant made the victim perform oral sex on him." Id.

[5] We granted the defendant certification to appeal, limited to the following issues: (1) "Did the Appellate Court properly uphold the trial court's denial of the defendant's request for a specific unanimity charge and correctly conclude that, under *State* v. *Mancinone*, 15 Conn. App. 251, 274, 545 A.2d 1131, cert. denied, 209 Conn. 818, 551 A.2d 757 (1988), cert. denied, 489 U.S. 1017, 109 S. Ct. 1132, 103 L. Ed. 2d 194 (1989), a specific unanimity charge is required only when the defendant has been charged with violating multiple subsections or multiple 'statutory elements' of a statute?" And (2) "[i]f a specific unanimity charge is required when there is evidence presented at trial of more than one separate and distinct criminal act that could serve as the basis for a single count, did the Appellate Court correctly conclude that the state's information was not duplicitous where the state presented evidence of more than one separate and distinct incident that could have served as the basis of conviction on each of the three counts?" *State* v. *Joseph V.*, 335 Conn. 945, 945–46, 238 A.3d 17 (2020).

[6] For the same reasons stated in the majority opinion in *Douglas C.*, we reject the argument of the concurring and dissenting justice (hereinafter, the dissent) that this court should adopt the test used by the United States Court of Appeals for the Second Circuit for determining if a single count of an information violates a defendant's right to jury unanimity as to instances of conduct. Specifically, we reject the dissent's argument that, like the Second Circuit, we should adopt and apply a presumption that our legislature intends that prosecutors have discretion to charge a defendant with either a single crime or an ongoing course of conduct crime if the legislature has not made its intent clear in this regard, as determined by the statute's plain language, related statutes, and relevant legislative history. See *State* v. *Douglas C.*, supra, 345 Conn. 448–60. As explained at length in *Douglas C.*, not only do we disagree with the dissent that our case law supports this presumption, but we also need not reach this issue, as we determine that the legislature's intent regarding the various statutes at issue is clear based on the statutory language, relevant case law, and/or legislative history. See id., 444 n.12.

[7] In *Douglas C.*, we recognized that "some federal courts have noted that some state courts have relied on their own common law to hold that a statute encompasses a continuing course of conduct. See *Dyer* v. *Farris*,

787 Fed. Appx. 485, 495 (10th Cir. 2019) (Under Oklahoma law, the general rule requiring the [s]tate to elect which offense it will prosecute is not in force when separate acts are treated as one transaction. . . . [W]hen a child of tender years is under the exclusive domination of one parent for a definite and certain period of time and submits to sexual acts at that parent's demand, the separate acts of abuse become one transaction within the meaning of this rule. (Citation omitted; internal quotation marks omitted.)), cert. denied,      U.S.     , 140 S. Ct. 1157, 206 L. Ed. 2d 207 (2020); id. (citing *Gilson* v. *State*, 8 P.3d 883, 899 (Okla. Crim. App. 2000), cert. denied, 532 U.S. 962, 121 S. Ct. 1496, 149 L. Ed. 2d 381 (2001), which stated that, generally, under Oklahoma law, rape was not considered continuing offense, but that, under Oklahoma's common law, court had recognized exception for ongoing sexual abuse of minors under certain circumstances). Because neither party [in *Douglas C.*] argue[d] that any common-law exception applie[d], we [did] not decide . . . whether creating or applying common-law exceptions in interpreting statutes is proper." (Internal quotation marks omitted.) *State* v. *Douglas C.*, supra, 345 Conn. 443–44 n.11.

[8] Although § 53a-65 (8) has been amended since the defendant's commission of the crimes that formed the basis of his conviction; see Public Acts 2006, No. 06-11, § 1; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 53a-65 (8).

[9] Defense counsel requested that the trial court instruct the jury as follows: "The state has alleged that the defendant . . . has committed the offense of sexual assault in the first degree. The state alleges in the first count the act of sexual assault in the first degree by way of fellatio and anal intercourse.

"You may find the defendant guilty of the offense of sexual assault in the first degree only if you all unanimously agree on the manner in which the state alleges the defendant committed the offense and that it occurred during the time and place alleged by the state.

"This means you may not find the defendant guilty on the first count of sexual assault in the first degree unless you all agree that the state has proved beyond a reasonable doubt that the [defendant] did engage in sexual intercourse by fellatio and anal intercourse with [the victim] and [the victim] was under [thirteen] years of age and [the defendant] was more than [two] years older than [the victim]. The state alleges these crimes were committed between August 23, 2006, and December 25, 2010, at or near [the new residence of the victim's father]. If the state has not met its burden of proving sexual assault in the first degree by way of fellatio and anal intercourse at said time and place, you must return a verdict of not guilty. As I have instructed you, when you reach a verdict, it must be unanimous on all elements of the offense."

We note that, in the proposed instruction, it is not clear whether defense counsel was asking the court to instruct the jury that it must be unanimous that a single, specific act occurred, or that that it must be unanimous that all alleged acts occurred.

[10] The defendant does not claim that count one violated his constitutional right to jury unanimity as to elements but only as to instances of conduct. This is because it is clear that count one alleges only a single violation of a single statute, statutory provision, or statutory clause. Specifically, § 53a-70 (a) (2) provides only a single actus reus: engaging in sexual intercourse. See General Statutes § 53a-70 (a) ("[a] person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person").

"Sexual intercourse" is defined as "vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body." General Statutes § 53a-65 (2).

Count one, therefore, does not allege the violation of multiple statutes, statutory provisions, or statutory clauses.

[11] The concurring and dissenting justice (dissent) argues that, because the plain language of the statute does not specifically prohibit charging sexual assault as a continuing course of conduct crime, the proposed presumption in favor of prosecutorial discretion applies. See footnote 6 of this opinion. The problem with this analysis, however, is twofold. First, as we stated in *Douglas C.*, there is no support in our case law for this presumption. *State* v. *Douglas C.*, supra, 345 Conn. 453. Second, even if such a presumption existed, it would not apply in the present case because, as we explain, the

language of the statute is plain and unambiguous. As we explained in *Douglas C.*, "[c]ontrary to the [dissent's] assertion, a full and complete analysis pursuant to § 1-2z does not end in silence on this issue, thereby requiring this court to resort to any kind of presumption. What the [dissent] calls silence is not silence but the absence of explicit language specifically stating that the statute criminalizes only a continuous course of conduct or only single acts. Rather than conduct a full analysis pursuant to § 1-2z and come to a conclusion about the statute's meaning, as we are obliged to do, the [dissent's] rule would hold that, if the statute is 'facially silent'—in other words, if explicit language is not used, such as the phrase 'course of conduct'—then a criminal statute is silent regarding whether it criminalizes a single act, a continuous course of conduct, or both, and a prosecutor can choose which charging method to apply." Id., 451. However, "[t]he fact that the legislature did not explicitly use the phrase 'continuous course of conduct' or 'each single act' does not end our analysis. Such talismanic phrases are not required. Rather, we must look to the definitions of the terms used." Id., 465.

[12] As the dissent observes, the language of § 53a-70 (a) (2) does not significantly differ from the language § 53-21 (a) (2), the risk of injury statute. One might be tempted to contend, although the state does not, that the two statutes should be interpreted similarly—either as both permitting the state to charge a continuing course of conduct, in addition to a singular act, or as neither permitting a continuing course of conduct. We note, however, that it is not only the statutory language that distinguishes § 53-21 (a) (2) from § 53a-70 (a) (2). As discussed at length in *Douglas C.*, our interpretation of the language in § 53-21 (a) (2) is premised in no small part on our prior interpretation of this statute and its legislative history—specifically, that prior to an amendment to § 53-21 in 1995, this court interpreted the language of the statute, which criminalized both acts and "situations," as criminalizing both single acts and continuing courses of conduct. See *State* v. *Douglas C.*, supra, 345 Conn. 468–69. The legislative history demonstrates that, when it amended § 53-21, the legislature did not intend to create a new crime or to alter the substance of the preexisting crime but, rather, intended merely to distinguish between crimes involving sexual contact and nonsexual contact. In contrast to § 53-21, § 53a-70 (a) (2) has no such legislative history; rather, this court consistently has interpreted the language at issue as criminalizing only single acts and not a continuing course of conduct. In fact, a stronger argument could be made under the plain language of both statutes that *neither* the risk of injury statute nor the sexual assault statute contemplates a continuing course of conduct. As in *Douglas C.*, the defendant in the present case does not make this argument either, although in *Douglas C.*, we already have rejected it.

[13] For example, as we explained in *Douglas C.*, "under our second degree stalking statute, [General Statutes] § 53a-181d, the legislature specifically proscribed certain continuous courses of conduct; see General Statutes § 53a-181d (b) (1), as amended by Public Acts 2021, No. 21-56, § 2 ('knowingly engages in a *course of conduct* directed at or concerning a specific person that would cause a reasonable person to (A) fear for such specific person's physical safety or the physical safety of a third person; (B) suffer emotional distress; or (C) fear injury to or the death of an animal owned by or in possession and control of such specific person' . . .); as well as certain kinds of single acts. See General Statutes § 53a-181d (b) (3) ('[s]uch person, for no legitimate purpose and with intent to harass, terrorize or alarm, by means of electronic communication, including, but not limited to, electronic or social media, discloses a specific person's personally identifiable information without consent of the person'). Similarly, under subsection (a) (1) of our risk of injury statute, the legislature specifically criminalized both a single act and a continuous course of conduct through the use of the terms 'act' and 'situation,' respectively. See General Statutes § 53-21 (a) (1) ('wilfully or unlawfully causes or permits any child under the age of sixteen years to be *placed in such a situation* that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or *does any act* likely to impair the health or morals of any such child' . . .). Thus . . . these statutes show that, when the legislature intends to explicitly criminalize both an act and a continuous course of conduct, it knows how to do so. That does not mean that such explicit statutory language is required to interpret a statute as criminalizing both an act and a continuous course of conduct. . . . [W]e by no means are adopting a presumption against such charging when the plain language of a statute is not explicit in this regard. Rather, courts must closely analyze the language of the statute, case law interpreting the statute, the statutory scheme and, if needed, the legislative history to determine if a statute criminalizes both an act and a continuous course of conduct."

(Emphasis in original.) *State* v. *Douglas C.*, supra, 345 Conn. 458–60.

[14] See, e.g., General Statutes § 53-21 (a) ("[a]ny person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child"); General Statutes § 53-142k (b) (1) (larceny by shoplifting of retail property, the value of which exceeds $2000, during 180 day period constitutes organized retail theft); General Statutes § 53a-119 (3) ("[a] person obtains property by false promise . . . pursuant to a scheme to defraud"); General Statutes § 53a-196e (a) ("[a] person is guilty of possessing child pornography in the second degree when such person knowingly possesses (1) twenty or more but fewer than fifty visual depictions of child pornography, or (2) a series of images in electronic, digital or other format, which is intended to be displayed continuously, consisting of twenty or more frames, or a film or videotape, consisting of twenty or more frames, that depicts a single act of sexually explicit conduct by one child"); General Statutes § 53a-215 (a) ("[a] person is guilty of insurance fraud when the person, with the intent to injure, defraud or deceive any insurance company . . . (2) assists, abets, solicits, or conspires with another to prepare or make any written or oral statement that is intended to be presented to any insurance company").

[15] The dissent's contrary take on *Snook* is mistaken. Although the state in *Snook* charged the defendant with sexual assault in the second degree as a continuing course of conduct crime, the defendant never challenged this method of charging as improper. Instead, he raised a double jeopardy claim, challenging his conviction of both sexual assault in the second degree and sexual assault in the third degree. See *State* v. *Snook*, supra, 210 Conn. 260.

[16] Nevertheless, the dissent contends that this state has a history of prosecutors charging sexual assault as a continuing course of conduct offense for almost one century and that this court has "approved prosecutors' decisions to charge repeated sexual assaults as a single course of conduct." As we explained in *Douglas C.*, however, "the fact that we have cases that merely state that a prosecutor charged a defendant under a single count based on a continuous course of conduct but the nature of the charging was not challenged on appeal does not support the [dissent's] proposed presumption. . . . That is not the same as this court holding that such an interpretation is proper or that a presumption of prosecutorial discretion exists. Most important, for purposes of determining legislative intent, of course, the past practice of prosecutors is not a relevant factor under § 1-2z in ascertaining whether a statute criminalizes a continuing course of conduct." (Citations omitted.) *State* v. *Douglas C.*, supra, 345 Conn. 454–55. Moreover, although "[i]t is true that a handful of Appellate Court cases have held that there is no unanimity violation when a defendant has been charged in a single count with violating the same statute based on multiple acts, especially in the context of ongoing sexual assault of children. . . . These cases do not support adopting the [dissent's] proposed presumption, as they do not apply a presumption. Rather, these cases were decided under the test set forth in [*United States* v. *Gipson*, 553 F.2d 453 (5th Cir. 1977)] and before this court recognized claims of unanimity as to instances of conduct. As we explained, the *Gipson* test did not require that a court analyze whether the statute at issue criminalizes a continuous course of conduct and is not the proper test for determining claims of unanimity regarding instances of conduct." (Citations omitted.) *State* v. *Douglas C.*, supra, 457–58.

[17] In response to the defendant's assertion in the present case that a different test should apply to claims of unanimity regarding multiple incidents of conduct, the state has not argued that there should be a continuing course of conduct exception that includes and relies on the dissent's proposed presumption. In fact, as recently as this court's decision in *State* v. *Cody M.*, 337 Conn. 92, 259 A.3d 576 (2020), in arguing that each incident of violation of a standing criminal protective order constituted a separate offense and thus could not be charged in one count under a continuous course of conduct theory, the state specifically asserted that "a violation of a protective order is more analogous to sexual assault, which is a separate act crime, than kidnapping, which is a continuous act crime." Id., 101. We make this observation not because we question whether the argument has been preserved in these cases. Rather, we find it illuminating that the constitutional officer whose discretion the dissent suggests the law presumes and the legislature necessarily acknowledges, has not made the argument the dissent makes.

[18] Even if we were to go on to examine the applicable legislative history,

we disagree with the dissent that it shows that the legislature intended to criminalize a continuing course of conduct. Specifically, the dissent argues that the legislative history shows that "the intent was to allow the prosecution not only of individual sexual assaults but also of ongoing sexual relationships between adults and minors, which at least implies a continuing course of conduct." (Emphasis omitted.) Text accompanying footnote 13 of the concurring and dissenting opinion. The use of the terms "relationship" and "relations" by one legislator in the legislative history does not show that the legislature intended to criminalize a continuing course of conduct. First, nowhere in the legislative history is the issue of criminalizing a single act or an ongoing course of conduct explicitly mentioned. Second, in context, it is just as reasonable to construe that legislator's use of the terms "relationship" and "relations" as euphemisms for sexual intercourse, as it is to construe them as referring to criminalizing a continuing course of conduct. Thus, at most, this legislative history creates ambiguity and is of little use.

[19] Specifically, count one alleged in relevant part: "[T]he . . . [defendant] did commit the crime of sexual assault in the first degree in violation of [§] 53a-70 (a) (2) in that on or about diverse dates between August 23, 2006, and December 25, 2010 . . . [he] did engage in sexual intercourse (fellatio and anal intercourse) with . . . [the victim] . . . ." (Internal quotation marks omitted.) *State* v. *Joseph V.*, supra, 196 Conn. App. 722 n.12.

[20] We are sympathetic "to the plight of both the young victims, often unable to state except in the most general terms when the acts were committed, and of prosecutors, either hampered by the lack of specific information or, when it is reported that the conduct occurred dozens or hundreds of times over a significant period, faced with the practical problem of how to deal with such a multitude of offenses." *Cooksey* v. *State*, supra, 359 Md. 18. Sympathies aside, however, we have only the words of our sexual assault statute to interpret and apply to the federal case law.

We note the observation of *Saraceno* and its progeny that a defendant is not prejudiced when a single count of sexual assault is premised on only general testimony that the defendant continuously sexually assaulted the minor victim over a period of time if this general testimony did not allow the jury to be divided as to which instance of conduct occurred but, rather, required the jury to credit all or none of the victim's testimony. This is consistent with how other state courts have treated general testimony regarding multiple instances of sexual assault of a child when applying federal law. See *State* v. *Voyles*, 284 Kan. 239, 253–55, 160 P.3d 794 (2007) (considering general nature of victims' testimony and general nature of defendant's defense challenging victims' credibility in determining harm of duplicitous indictment in multiple acts case); *State* v. *Ashkins*, 357 Or. 642, 654, 357 P.3d 490 (2015) (in addressing harm, explaining that, "in the context of nonspecific and undifferentiated evidence of multiple occurrences of a single charged offense, a jury concurrence instruction may have been unnecessary because there would have been no basis for the jurors to choose any particular occurrence as the one proven"); *State* v. *Fitzgerald*, Docket No. 38347-7-I, 1997 WL 327421, *2 (Wn. App. June 16, 1997) (decision without published opinion, 86 Wn. App. 1059) (in multiple acts case in which defendant entered only general denial and proof of crime was solely dependent on victim's credibility versus that of defendant, court's failure to give jury unanimity instruction may be harmless when rational trier of fact would have no reasonable doubt about other indistinguishable incidents).

The state may argue that, if these kind of general testimony cases do not prejudice a defendant, it might be that there exists a common-law exception to the right to jury unanimity for a continuing course of conduct of sexual assault of children when there is only general testimony. Because the state has not raised this issue, however, and because the present case does not involve only general testimony, we do not address it. We do note, however, that federal courts have held that a defendant is not prejudiced, even if a single count of an information is premised on multiple, separate incidents of conduct if the jury is charged with having to agree that all alleged acts occurred. See *State* v. *Douglas C.*, supra, 345 Conn. 446 n.14. Some state courts have followed suit in sexual assault cases involving children. See *People* v. *Jones*, 51 Cal. 3d 294, 322, 792 P.2d 643, 270 Cal. Rptr. 611 (1990) (modified August 15, 1990); *Baker* v. *State*, 948 N.E.2d 1169, 1177 (Ind. 2011).

We also note that several state legislatures have amended their sexual assault statutes to criminalize a continuing course of sexual assault against children. See *Cooksey* v. *State*, supra, 359 Md. 27. Our legislature might wish to consider similar legislation. Cf. Cal. Penal Code § 288.5 (Deering 2008) (prohibiting continuous sexual abuse of children); N.Y. Penal Law § 130.75

(McKinney 2020) ("[1] [a] person is guilty of a course of sexual conduct against a child . . . when, over a period of time not less than three months in duration: (a) he or she engages in two or more acts of sexual conduct, which includes at least one act of sexual intercourse, oral sexual conduct, anal sexual conduct or aggravated sexual contact, with a child less than eleven years old"). This is a more prudent course of action than adopting the dissent's proposed presumption, which would apply not only to sexual assault cases involving children but to all criminal statutes.

Finally, we recognize that sexual assault prosecutions are most often played out in state courts, not federal courts, and, thus, in defining the test applicable to claims of unanimity as to instances of conduct, federal courts perhaps did not consider the unique problems associated with charges of ongoing sexual assault of children. We do not believe, however, that we are at liberty to adopt a different constitutional test for different statutes or different kinds of crimes. Rather, we apply a single test and leave it to the legislature to craft or amend statutes as it sees fit in light of this test.

[21] Even if we were to agree with the dissent that § 53a-70 (a) (2) is ambiguous and that this court should adopt and apply the dissent's proposed presumption; see footnote 6 of this opinion; the application of this presumption to the facts and circumstances of this case still would establish a violation of the defendant's right to jury unanimity as to instances of conduct. The dissent argues that it is not impossible to know whether the jury unanimously agreed that the defendant committed any one particular assault because, although there was a mixture of both general testimony and specific testimony, "the defense as to each of those incidents—as well as to all of the generic continuous/repeated sexual abuse testimony—was the same"; text accompanying footnote 4 of the concurring and dissenting opinion; namely, that the witnesses, the victim and T lacked credibility. Although defense counsel did attack the credibility of these witnesses, the dissent overlooks the fact that defense counsel also cross-examined the victim and T extensively regarding the specifics of each of the three specific incidents of conduct and then argued in closing why the jury should not credit each particular incident. The primary focus of the trial was on these specific incidents of conduct. The present case is distinguishable from prior Appellate Court cases in which that court held that any duplicity or unanimity problem was not prejudicial because there was only generic testimony regarding ongoing abuse. See, e.g., *State* v. *Saraceno*, supra, 15 Conn. App. 230. Thus, it was very possible that the jury did not agree unanimously on which instance of conduct the defendant committed.

[22] This court cited to *Schad* in *Famiglietti* but did not address the effect of *Schad* on the applicable test. See *State* v. *Famiglietti*, supra, 219 Conn. 620.

[23] The state argues that the *Gipson* and *Schad* tests merely use different language to express the same legal test. This argument is undermined by *Schad*'s explicit rejection of the test applied in *Gipson*. Even if the *Gipson* rule were still considered good law, the defendant's claim would fail both because the trial court did not explicitly sanction a nonunanimous verdict and because, even if we assume that the trial court did sanction a nonunanimous verdict, this court already has held that, under the *Gipson* test, active or passive participation in sexual activity as proscribed under § 53-21 (a) (2) constitutes alternative means, not elements, and does not require a specific unanimity instruction. See *State* v. *Spigarolo*, 210 Conn. 359, 391–92, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989).

[24] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

The defendant argues that because, in the present case, the state could have based the charge of risk of injury to a child on alternative types of statutorily prohibited conduct, the conspiracy count likewise rested on alternative bases of criminal liability. Thus, the defendant's claim as it relates to count three is premised on the success or demise of his claim regarding count two. Because we hold that the statutory language at issue in § 53-21 (a) (2) created alternative means of committing a single element, and not separate elements, thereby not violating the defendant's right to jury unanimity, the defendant's claims as it relates to count three likewise fails.

[25] The defendant argues that case law regarding double jeopardy and risk of injury to a child establishes that the two alternatives create separate offenses that the state must charge as such. The defendant, however, misconstrues our double jeopardy case law. For example, in *State* v. *Snook*, supra,

210 Conn. 244, this court held that the state may charge a defendant with two counts of risk of injury to a child: one count premised on the defendant's contact with the victim's intimate parts; the other count premised on the defendant's having subjected the victim to contact with the defendant's intimate parts. See id., 262. We did not hold, however, that, when alleging that a defendant has violated § 53-21 multiple times, the state must charge the defendant under separate counts for each violation. Rather, for double jeopardy purposes, the state may, but is not required to, charge each violation in a separate count.